JORGEN J. GRAM, Plaintiff and Respondent, v. NORTHERN PACIIFC RAILROAD COMPANY, Defendant and Appellant.

1. **Damage by Fire; Proximate Cause Question for Jury.**

    In an action for damages caused by a fire which escaped from one of defendant's trains, and ignited upon defendant's right of way, and which spread over adjoining land, and finally destroyed plaintiff's property, *held*, that whether the fire started by the defendant was the proximate cause of the injury complained of, or whether such injury was the result of another and independant cause, were, under the evidence, questions of fact for the jury, and the court did not err in submitting such question to the jury, with proper directions as to the law. This is true where the wind shifts or increases in violence after the fire starts, and before the damage is done.

2. **Prairie Fire; Evidence of Cause.**

    Where the undisputed evidence shows that the fire which consumed plaintiff's property started on defendant's right of way, about one rod to leeward of the railroad track, and that such fire sprang up immediately after a train passed the point where the fire originated, and there was no other visible cause for the fire; and no other agency likely to set fires observed in that immediate locality where the fire started, *held*, that the evidence was sufficient to justify the jury in finding the

primary fact that defendant's train threw out and started the fire in question.

## 3. Party Using Right of Way Liable for Negligent Acts Done Thereon—Evidence of User.

Where the answer admits that the defendant at the time in question owned and operated the railroad in question, and where the only question at issue was as to the width of the right of way of such railroad, *held*, that oral evidence was properly introduced to show the width of the strip of land upon each side of the track which defendant was occupying and using for right of way purposes, at or just prior to the date of the fire in question. *Held, further,* that defendant would be responsible for any act of negligence committed by it on the right of way which it was in possession of, and actually using for right of way purposes, whether it was or was not at the time seized of the title of such right of way, or whether it had or had not the right to the possession thereof.

## 4. Pleading—Contributory Negligence—Harmless Error—Negligence per se.

Where the complaint omitted to allege due care on the part of the plaintiff, and defendant's counsel objected to the introduction of any evidence in support of the complaint for that reason, claiming that such omission was fatal, and that the complaint did not state a cause of action by reason of such omission, and that the trial court overruled the objection, *held*, that such ruling was not error; but, upon such complaint, evidence was introduced against defendant's objection tending to show that the plaintiff had established a fire-break, and had acted prudently and with due care to prevent fires from coming upon his premises. *Held*, that while such evidence was not necessary on plaintiff's part to make out a *prima facie* case, the introduction of such evidence was not error which could prejudice the defendant's case, and hence the court will not grant a new trial, for the reason that such unnecessary evidence was introduced. *Held, further*, that, if the plaintiff had not established any fire-break, such omission would not constitute negligence *per se;* but that in such case the question of whether such supposed omission would or would not constitute negligence would be a question of fact for the jury to determine under proper directions from the trial court. The question in such case would turn upon the inquiry as to whether or not the omission under the circumstances amounted to negligence. Such a question usually would be one of pure fact.

## 5. Negligence of Railroad Company—Inflammable Material on Right of Way.

The defendant requested the trial court to give the jury the following instruction. "If you find from the evidence that the defendant

permitted combustible materials to grow and accumulate upon its right of way, and that engines used upon the line of said railroad were furnished with the best known appliances to prevent the escape of fire, and that such appliances were upon September 21, 1885, in good order and that the fire was accidentally and not negligently communicated to the combustible material on its right of way, and from there to plaintiff's property, the defendant is not liable in this action." The request was refused. *Held*, that such refusal was not error. Due care in providing appliances, and in operating a train, does not relieve a railroad company from liability for a loss by fire which originated from sparks accidentally thrown out upon inflammable material negligently permitted to accumulate and remain upon the right of way. Due care in one direction does not excuse negligence in another.

(Opinion Filed October 9, 1890.)

*A*PPEAL from district court, Stutsman county; Hon. RODERICK ROSE, Judge.

John S. Watson, for appellant: Complaint was defective because it did not negative contributory negligence on the part of plaintiff: Wanner v. N. Y. C. R. R. Co., 44 N. Y. 465; Wilson v. Charlestown, 8 Allen 137; Wheelock v. Boston, 105 Mass. 203; Lake v. Miller, 25 Mich. 274; Moore v. Central, etc., 24 N. J. L. 268; Murphy v. Chicago, etc., 45 Iowa 661; Penn. Co. v. Galentine, 7 A. & E. R. R. cases, p. 517; Thompson on Neg. p. 152. · That the wind shifted after the fire started, and that but for such change of direction the plaintiff's property would not have been destroyed, so that there was an independent cause intervening between the cause complained of and the result: Pa. Co. v. Whitlock, 22 Am. & Eng. R. R. Cases, 629 and note; Pielke v. Chicago, etc., 41 N. W. 669; Rorer on R. R., vol. 2, 806-8; Fent v. R. R., 59 Ill. 350; Toledo v. Muthersbaugh, 71 id. 572.

S. L. Glaspell, for respondent: Contributory negligence is purely a matter of defense: Saunders v. Reister, 1 Dak. 151; Mares v. N. P., 3 id. 336 & U. S. S. C., 31 L. Coop. ed. 296; Beach on Contrib. Neg., § 157. That the fire caught on the right of way was sufficiently shown; Ry. Co. v. Benson, 32 Am. & Eng. R. R. Cases 330. The injury to plaintiff was the ordinary and usual result of the fire, and the circumstance of the changing wind being perfectly natural, might, and should have been, anticipated: Cooley on Torts, pp. 68, 71. The

question whether or not the fire set out was the proximate cause of the injury was one of fact for the jury: Krippner v. Biebl, 9 N. W. 671; Sutherland on Dam., vol. 1, p. 25; Atkinson v. Goodrich, 18 N. W. 764.

WALLIN, J.    This action was brought to recover damages for the destruction of certain personal property by a prairie fire alleged to have been negligently started by one of defendant's locomotive engines.    The fire occurred on September 21, 1885, and was started about 2:30 P. M. on the east side of, and about one rod from, defendant's railroad track; and, after spreading over about four miles of intervening prairie, reached plaintiff's premises, and destroyed his property, about 5 o'clock P. M. of the same day.    The acts of negligence charged in the complaint are briefly as follows:    *First.* Faulty construction of one of defendant's engines, and its negligent and unskillful management, by reason whereof fire was allowed to escape.    *Second.* The use of lignite coal as fuel to generate steam, which, it was claimed, necessarily resulted in large pieces of burning cinders being emitted from the smokestack.    *Third.* The existence by sufferance of the defendant of large quantities of dry grass and weeds, and other dry and combustible material upon its right of way at and near the point where the fire started.    No evidence was offered by the plaintiff in support of either the first or second ground of negligence, as above stated, and hence we shall consider only the third or last ground.

The facts as to the time, place, and circumstances under which the fire originated are not controverted in the testimony; nor do counsel appear to differ in regard to the same.    The undisputed evidence tends to show that about 2:30 o'clock P. M. of the day of the fire, while one of defendant's trains was going north on defendant's line of railroad, and immediately after it had passed a point on section 24, township 142, range 65, a few rods north of a certain crossing, a fire was seen to spring up suddenly, and without visible cause other than that of the passing train, on the east side of the track, and about one rod distant therefrom. When the fire started, a strong wind was blowing from the northwest, and it continued to blow from the northwest until about 4 P. M., when it shifted a little to the north, and was blowing

from the last-mentioned quarter at about 5 P. M., at which time the fire, which had been running rapidly before the wind, struck and consumed plaintiff's property. Plaintiff's premises are on section 34, township 142, range 64, and consequently are located about $4\frac{1}{2}$ miles southeast of the initial point of the fire. The course or path of the fire was continuous and unbroken from where it originated to the plaintiff's premises. *i. e.*, from northwest to southeast; but the ravages of the fire were temporarily arrested at several intervening points, and its direction diverted for short distances by farms, plowed ground, and fire-breaks. There is evidence tending to show that, in one place, the fire, on striking an obstacle which it could not leap over, divided— one part going north of and away from plaintiff's property; and the other branch of the same fire moving south, and around obstacles, and thereby reaching plaintiff's place, and doing the damage. Defendant's counsel, at the close of the plaintiff's testimony, requested the court to direct a verdict in defendant's favor. This was refused, and the ruling is assigned as error. We think the ruling was clearly correct.

Appellant's counsel ingeniously argues that the loss suffered by the plaintiff was not a result which could be reasonably contemplated, or one which naturally flowed from the act of negligence complained of, for the reason, as counsel claims, that the plaintiff's loss was caused by an independent agency, viz., by a change of wind from northwest to north, or nearly north, which it appears occurred shortly before the fire reached plaintiff's premises. But whether such slight change of wind did or could, as an independent agency, operate to bring about the loss which the plaintiff has suffered was a matter of pure fact for the jury to decide, and was not a matter of law to be determined by the court. The witnesses who gave their opinions upon the question did not agree as to whether the change of wind did or did not bring about the plaintiff's loss. The question was one about which intelligent men might reasonably and honestly differ, and therefore the trial court very properly declined to invade the province of the jury, and arbitrarily determine a matter of mere fact. In its charge to the jury the trial court said: "In order that the plaintiff may recover in this action, the jury must be-

lieve from the evidence, not only that the defendant negligently started the fire, but also that the•fire so started by defendant was the proximate, and not the remote, cause of the injury complained of. If you find from the evidence that a prairie fire other than that started by defendant was burning on the north of plaintiff's property at the same time that the fire is claimed to have been started by defendant's locomotive engine, north of Buchanan station, and that both of said fires, being driven by the wind in the direction of plaintiff's property, were united and joined into one fire before the same swept down upon and destroyed plaintiff's property, then the defendant would not be liable in this action." And in another part of the charge the court said that the jury were to consider "whether the fire so kindled was the direct and proximate cause of the fire which burned plaintiff's property, or whether some other fire, other than that which defendant kindled, was the fire which burned plaintiff's property, or whether some other cause intervening between the fire which defendant kindled and the one which burned plaintiff's property was the one which caused him the damage of which he complains." Again, the court said to the jury that "if the fire so set or kindled by defendant was not the proximate cause of plaintiff's injury, because of some other intervening cause, or because it was not the same fire that caused plaintiff's injury, then you must also find for the defendant." To our mind, the testimony adduced in the case gives very little countenance to the theory of counsel of an independent agency or intervening cause which led to the injury; and we are quite clear that, if there was any foundation for the theory to be found in the evidence, the question presented was one of fact to be determined by the jury, aided by proper instructions from the court. In view of the testimony, we think the trial court sufficiently elucidated the law or doctrine of an independent agency, and very properly submitted that feature to the jury. Where doubt arises as to whether damages are proximate or remote, the issue should be presented to the jury by proper instructions. Clemens v. Railroad Co., 53 Mo. 366; Kellogg v. Railroad Co., 26 Wis. 223; Higgins v. Dewey, 107 Mass. 494.

The evidence that the fire which spread and did the damages

complained of was thrown out from one of defendant's passing trains, and ignited in dry grass about one rod east of and to the leeward of the track, was, though purely circumstantial, legally competent, and, not being disputed, was sufficient to warrant the jury in finding that the defendant's engine started the fire. Karsen v. Railroad Co., 29 Minn. 12, 11 N. W. Rep. 122, and authorities there cited. But defendant's counsel claims that there is no competent evidence in the record that any fire which was emitted from the passing train fell upon or caught in grass standing upon the defendant's right of way, and that there is no competent evidence to show that defendant owned or used a right of way of any width. It is admitted by the answer that, at all times mentioned in the complaint, the defendant owned the line of railroad in question, and operated the same by the use of the usual locomotive engines and rolling stock; and defendant's own witnesses state that defendant ran trains over said railroad on the day of the fire, and that a train passed the point where the fire started about the time when other testimony shows that the fire sprang up. But the complaint alleges, in substance, that, at the time in question, the defendant owned and used a right of way about fifty feet in width, on each side of its said railroad, and that the fire which did the damage started upon such right of way. This averment of the complaint is denied, and, except so far as it may be admitted by the answer, the burden rests with the plaintiff to establish its truth; but, as we have seen, in its answer to the complaint, the defendant admits of record that, at all times mentioned in the complaint, it was the owner of the railroad in question. This is, in effect, an admission that it owns the right of way, inasmuch as a right of way is inseparable from, and constitutes an essential part of, every railroad. This admission takes the question of ownership out of the case, and leaves only the question of the width of defendant's right of way at issue. Appellant's counsel concedes that, under the statute, defendant might lawfully condemn for right of way purposes a strip of land fifty feet wide on each side of its track, but insists upon the fact that plaintiff offered no written or documentary evidence of any condemnation of or of title to the right of way in question.

We are inclined to think, but do not so decide in this case, as it is unnecessary to do so, that the court would have been warranted in holding under the admissions in the answer, and in the absence of evidence to the contrary, that the right of way which the defendant owned was at least of the width which defendant might lawfully condemn for railroad purposes. But there was competent and uncontroverted evidence tending to show the width of the right of way at or near the point where the fire started, which the defendant was using for railroad purposes, and long had been using for such purposes. One Keeler, a witness for plaintiff, being on the stand, was asked: "Question. How much ground was the defendant using for a right of way through the section at that time? Answer. Well, I can certainly say that they used 300 feet, if not a trifle more." The witness further testified that "he based this statement upon throwing out of dirt from their cuts, and from their taking in dirt from their fillings, and by their railroad-crossing sign-posts, and their mile posts, and a well they (the railroad) had dug, or attempted to dig, about fifty feet from the track on the east side of the track on the same section, and probably sixty rods north of the location of this fire. That summer, prior to September 21st— the date of the fire—I frequently saw the ground used for a right of way." No attempt was made to contradict this testimony, but appellant's counsel, in his brief, says, "The best evidence was the recorded title," etc., and that no foundation was laid for what counsel calls "secondary evidence." The admission of this testimony is assigned as error. We think the evidence clearly competent to prove the only question at issue upon this branch of the case, namely, as to the width of the right of way which defendant was using at and near the point where the fire originated. The practical question was and is whether, at the time the fire was thrown out by defendant's train, it fell upon and ignited dry grass standing upon right of way then in use as such by the defendant. It is moreover perfectly clear to this court that defendant's liability for the alleged negligence does not at all depend either upon its ownership, or its right to the possession of the strip of land upon which the fire originated. If at that time the defendant was actually using the land for its

right-of-way purposes, it would be none the less liable, if it was a mere trespasser upon such land. We find no error in the ruling of the trial court admitting this evidence.

The trial court refused to sustain defendant's objection, made at the beginning of the trial, to the introduction of any evidence in support of the complaint, for the reason, as defendant's counsel claims in his brief, that the averment and proof of the absence of negligence on plaintiff's part was an essential part of plaintiff's case. The ruling is assigned as error here. We hold that the ruling was not error. Respectable authority can be found sustaining defendant's position, but the decided weight of recent precedents justifies the ruling of the trial court. Railroad Co. v. Gladmon, 15 Wall. 401; Railroad Co. v. Horst, 93 U. S. 291; Hocum v. Weitherick, 22 Minn. 152; Wilson v. Railroad Co., 26 Minn. 278, 3 N. W. Rep. 333; Robinson v. Railroad Co., 48 Cal. 409; Potter v. Railroad Co., 20 Wis. 533; Mares v. Railroad Co., (Dak.) 21 N. W. Rep. 5; South-West Va. Imp. Co. v. Andrew, (Va.) 9 S. E. Rep. 1015; Hickman v. Railroad Co., (Miss.) 5 South. Rep. 225; Thompson v. Railroad Co., 51 Mo. 190.

Testimony was introduced by the plaintiff, against the objection of defendant, tending to show that the plaintiff had, as a matter of fact, established a fire-break around the property which was destroyed. This ruling is claimed to be error. We think otherwise. It is true that it was not technically necessary for the plaintiff to either allege or prove the absence of contributory negligence in order to make out a *prima facie* case, but the admission of such testimony under the circumstances could not prejudice the defendant's case, and we cannot therefore undo the results of the trial for that reason. If plaintiff had not established a fire-break around his premises, such omission would not constitute negligence *per se;* but in such case the question of whether or not such omission would constitute contributory negligence would be a question for the jury to decide under proper directions from the court. Karsen v. Railroad Co., 29 Minn. 12, 11 N. W. Rep. 122; Kellogg v. Railroad Co., 26 Wis. 223; Erd v. Railroad Co., 41 Wis. 65. We do not think the later Wisconsin case cited by counsel for the appellant (*i. e.,* Murphy v. Railroad Co., 45 Wis. 222) overrules the authority of

the previously-decided cases, so far as the point here involved is concerned. In the case under consideration, the trial court defined "due care," and fully and fairly submitted to the jury the question of whether plaintiff's own lack of due care contributed to the injury of which he complained. The court, in speaking of this point, said to the jury: "If you further find that plaintiff contributed to said loss in any way by his own negligence, then your verdict must be for the defendant." And further on in its charge the court used the following language: "If you find from all the evidence in the case that the fire which plaintiff claims that defendant set, and which injured him, would not have occurred if the plaintiff had used the care in the protection of his property which a man of ordinary prudence would have used under the circumstances, then the plaintiff cannot recover," etc.

Counsel ignore, or at least do not discuss, in their briefs any feature of the negligence charged save that relating to the condition of defendant's right of way at the point where the fire started, with respect to the inflammable material which it is alleged was suffered to stand and remain thereon. The evidence in support of this species of negligence was all introduced by the plaintiff, and being undisputed was sufficient to warrant the jury in finding the defendant guilty of negligence. One witness testified as follows: "On that trip, I passed or saw, a train of cars of the defendant. It was a mixed train of cars, and had an engine. I did not meet the train. I saw it about a half a mile away, when the fire started from the train. I seen the fire start. I was about a half mile distant. The fire was started near the railroad-crossing known as the 'Gilmore Crossing.' I drove right to the place where the fire started, and drove to the station, and I saw the fire coming to the south-east, with a high wind. The fire started about a rod north of the crossing, and about a rod from the track on the east side of the track on section 24. As soon as the train left the place where the fire started, I saw the fire flash up, and everything was in a blaze, and at a high wind. The fire started in the grass and weeds on the east side of the track. The grass and weeds in which the fire started were from six to twelve inches high. I was familiar with that locality, and the lay of the land

there. The grass and weeds were dead. It had frosted, and they were in good condition to burn everywhere in the neighborhood. There had been no grass or weeds cut on the right of way at this particular place. They were high and dry. Had been so since the early part of September. They had not been cut down there, or mowed off and destroyed. It was quite windy. The wind was from the north-west, and blowing south-east. The fire was traveling south-east, very fast, when I last saw it, traveling in the direction of Gram's house. There was no plowing there within 100 yards on either side of this point, and there was not, to my knowledge, any fire protection of any kind." The witness further testified that the grass and weeds extended from the track east, clear out on the prairie, and that the adjoining land-owners had not cut or mowed down any grass on their land, and their land was in the same condition as the right of way as to dry grass and weeds. Another witness testified: "I don't know exactly where the fire started, but in that place there is a small slough, and the grass ran up to the track, nearly. The grass there was heavy, very dry, and would burn. Had been in that condition for two or three weeks prior to that time. No effort had been made, that I know of, to plow any fire-breaks within fifty feet of the railroad tracks. Had such been done I would have been apt to have known it." Other witnesses observed the same fire, and testified as to its continuous course, and saw it when it struck and destroyed plaintiff's property. This evidence stands undisputed, and under the authorities certainly tended to show that defendant was negligent, as charged in the complaint, as to keeping its right of way clear from combustible material, and that fire from a passing train caught in such dry material upon the right of way and spread until the damage was done. There is much conflict of authority, but the trial court, we think, stated the better law applicable to this feature of the case in the following instructions: "You are instructed that it was not negligence *per se* in the defendant to suffer such natural accumulation of dry grass and other combustible matter on the sides of its track as was liable to be ignited by sparks of fire from its engines, unless it was to such an extent as would not be permitted or done by a cautious

and prudent man upon his own premises, if exposed to the same hazard from fire, were the combustibles accumulated upon the defendant's right of way." This instruction, in our opinion, embodies the most reasonable rule of law applicable to right-of-way fires, and one which seems to be fair to both sides. See authorities above; also Railroad Co. v. Salmon, 39 N. J. Law, 299; Railroad Co. v. Stanford, 12 Kan. 379; Webb v. Railroad Co., 49 N. Y. 420; Railroad Co. v. Crawford, 24 Ohio St. 631.

The requests presented by defendant's counsel, and which were refused by the trial court, are numerous and voluminous, and we think that it is unnecessary to quote them at length in this opinion. Such portions of the requests as were unobjectionable were given in the charge to the trial jury, and have been already adverted to. Those which were refused seem to us to have been properly refused under the rule of law as laid down by the authorities cited. One of the defendant's requests was as follows: "If you find from the evidence that the defendant permitted combustible materials to grow and accumulate upon its right of way, and that engines used upon the line of said railroad were furnished with the best known appliances to prevent the escape of fire, and that such appliances were on September 21, 1885, in good order, and that fire was accidentally and not negligently communicated to the combustible materials on its right of way, and from there to plaintiff's property, the defendant is not liable in this action." Overlooking merely verbal objections, this request embodies a proposition directly the opposite of our views of the law. In our opinion, due care in operating the train in all respects will not relieve the company from responsibility for a loss from fire which originated upon a right of way covered with inflammable material in which the fire ignites, and which is, by the negligence of the company, permitted to accumulate and remain upon the right of way. Due care in one direction cannot excuse negligence in another direction.

At the opening of the argument in this case respondent's counsel moved the court to "dismiss the appeal," and affirm the judgment of the court below, for the reason, as counsel claims, that the bill of exceptions, which is in fact annexed to the judgment

roll, was not settled in time, and was, for divers reasons suggested by counsel, never legally settled nor certified by the court below, and hence, as counsel argues, should not be considered by this court as a bill of exceptions within the meaning of the law. Counsel further argues that the motion for a new trial, which appears to have been made and overruled, cannot be reviewed, because the motion was based wholly upon such bill of exceptions, and must fall with the bill. No reason is suggested by respondent's counsel, either in his brief or upon the oral argument of the motion, why the appeal should be dismissed, hence the motion must be denied. The motion was misconceived. If, as counsel claims, the bill of exceptions was never legally settled nor certified, it would properly constitute no part of the judgment roll. Under such circumstances, a motion would lie to purge the record by striking out or suppressing the extraneous document. No such motion was made or argued in this case, and hence the entire record, as contained in the judgment roll, remains intact, and must be considered in disposing of the case upon the merits. Upon the merits of the case, the judgment of the district court is affirmed. All concur.